IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Value Based Consultants, LLC,

          Plaintiff,

              v.                        **Civil No. 24-1596 (GMM)**

Ring MD USA, Inc.,

          Defendant.

OPINION and ORDER

Pending before the Court is Plaintiff Value Based Consultants, LLC's ("VBC") *Motion to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e) and for Relief from Judgment under Fed R. Civ. P. 60(B)* ("*Motion to Alter Judgment*") (Docket No. 11). For the following reasons, the *Motion to Alter Judgment* is **GRANTED IN PART** and the civil action is **TRANSFERRED** to the District Court for the District of South Carolina.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2024, VBC filed a *Complaint* against Ring MD USA, Inc. ("Ring MD") for breach of contract on the basis of diversity of jurisdiction. (Docket No. 1). The following facts are alleged in the *Complaint*.

VBC is a healthcare consulting company. (Id. at ¶ 14). Ring MD is a "healthcare corporation with a network designed to connect patients with medical doctors." (Id. at ¶ 13). On August 18, 2020,

Civil No. 24-1596 (GMM)
Page -2-

Ring MD and the VBC executed a "letter agreement," which re-affirmed that Ring MD would pay VBC $300,000.00 in exchange for VBC's "cash advances and services." (Docket No. 1-1 at 4). The agreement established a term of one year to pay the principal amount, which was to be mailed via check to VBC's Puerto Rico address no later than December 31, 2021. (Docket Nos. 1 at ¶ 18; 1-1 at 4). It also established an interest charge of 1.5% per month for late payments. (Docket No. 1-1 at 4). A choice-of-law clause was included, with the laws of the State of Delaware governing. (Id. at 1). VBC provided the cash advance and services, but Ring MD failed to pay the agreed amount. (Docket No. 1 at ¶¶ 20; 21).

A final notification was sent to Ring MD on December 20, 2024, informing Ring MD of the debt. (Docket No. 1-2). With 36 months of default up to the moment that the final notification was sent, the total amount owed as of that time was sent ("A") was calculated as $A = 300,000(1+0.015)^{36} = \$512{,}730.00$. (Id.). VBC's counsel informed Ring MD that such an amount would continue to accrue interest - at a rate of 1.5% per month - until its payment. (Id.).

Accordingly, VBC seeks judgment against Ring MD for principal and past interests ($512,730.00), plus additional interests at a rate of 1.5% per month (from January 2025 and onward) until the debt is paid in full, along with attorney's fees and costs, and "any and all other relief to which Plaintiff may be justly entitled." (Docket No. 1 at 5).

Civil No. 24-1596 (GMM)
Page -3-

The deadline for Ring MD to file a responsive pleading to the *Complaint* expired on February 25, 2025. (Docket No. 4). On March 28, 2025, VBC filed a *Motion for Default Entry as to Ring MD USA, Inc.* citing Ring MD's failure to respond to the *Complaint*, which was served on February 4, 2025. (Docket No. 5).[1] Service was performed on Dee Hetrich, paralegal, "who is designated by law to accept service of process on behalf of Ring MD USA, Inc." in Canton, Ohio by Process Server John Miller. (Docket No. 4).[2]

The Court granted entry of default on March 31, 2025, and the Clerk's Office entered default against Ring MD on that same day. (Docket Nos. 6; 7). Subsequently, VBC filed *Plaintiff's Motion in Support of Entry of Judgment in Default* moving for a default judgment against Ring MD for $536,163.08[3], plus costs and agreed attorney's fees in the amount of $134,040.77 – totaling $670,203.85. (Docket No. 8 at 7). The Court, nonetheless, declined to enter a default judgment, upon a finding that the evidentiary record did not support the contention that this Court enjoys personal jurisdiction over non-resident Defendant Ring MD.

---

[1] VBC's owner, Harlan Benjamin Harvey, submitted an *Unsworn Statement Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746* stating that "Defendant was duly served with process on February 4, 2025." (Docket No. 8-3).

[2] VBC filed *Summons Returned Executed* on March 13, 2025. (Docket No. 4). "A return of service generally serves as *prima facie* evidence that service was validly performed." Blair v. City of Worcester, 522 F.2d 105, 111 (1st Cir. 2008).

[3] After a total of 39 months of default – from January 2022 to March 2025 – the amount owed was calculated as 300,000(1+0.015)^39. (Docket No. 8 at 7) ("[T]he principal amount of $300,000.00, interests in the amount of $236,163.08, which continue to accrue until full payment of the debt at 1.5% per month . . . .").

Civil No. 24-1596 (GMM)
Page -4-

In response, VBC filed a *Motion to Alter Judgment,* positing that this Court does enjoy personal jurisdiction over Ring MD because while "Ring MD did not perform any of its obligations in Puerto Rico, the contract did require performance in Puerto Rico, and the contract performance is centered in Puerto Rico[, thus there was] more than one act in the forum state substantially related to the suit." (Docket No. 11 at 15). The Court, on July 24, 2025, filed an *Order* holding in abeyance the resolution of VBC's *Motion to Alter Judgment* and ordering Plaintiffs file additional evidence that sustain the contention that this Court enjoys personal jurisdiction over Ring MD. (Docket No. 12). On August 8, 2025, VBC submitted such evidence. (Docket No. 13). The Court, henceforth, examines the merits of VBC's *Motion to Alter Judgment*.

## II.  LEGAL STANDARD

### A.  Fed. R. Civ. P. 59(e)

Federal Rule of Civil Procedure 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. Fed. R. Civ. P. 59(e); Banister v. Davis, 590 U.S. 504, 507 (2020) ("The Rule enables a party to request that a district court reconsider a just-issued judgment.").

"For such a motion to succeed, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest

Civil No. 24-1596 (GMM)
Page -5-

error of law." <u>Mulero-Abreu v. P.R. Police Dep't</u>, 675 F.3d 88, 94-
95 (*citing* <u>Palmer v. Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir.
2006)) (internal quotations omitted). The "set forth facts or law
[must be] of a strongly convincing nature to induce the court to
reverse its earlier decision." <u>*In re* Schwartz</u>, 409 B.R. 240, 250
(B.A.P. 1st Cir. 2008) (*citing* <u>*In re* Pabon Rodriguez</u>, 233 B.R.
212, 219 (Bankr. D.P.R. 1999), *aff'd*, 17 F. App'x. 5 (1st Cir.
2001)).

"The moving party cannot use a Rule 59(e) motion to cure its
procedural defects or to offer new evidence or raise arguments
that could and should have been presented originally to the court."
<u>*In re* Schwartz</u>, 409 B.R. at 250.

B.    <u>Fed. R. Civ. P. 60(b)</u>

Federal Rule of Civil Procedure 60(b) allows relief "from a
final judgment, order, or proceeding" on the basis of five factors:
"mistake, inadvertence, surprise, or excusable neglect"; "newly
discovered evidence"; "fraud . . . , misrepresentation, or
misconduct by an opposing party"; a "void" judgment; or that "the
judgment has been satisfied, released, or discharged," "is based
on an earlier judgment that has been reversed or vacated," or
"applying it prospectively is no longer equitable." Fed. R. Civ.
P. 60(b).

Motions under Rule 60(b) must meet a "high threshold" that
"reflects the need to balance finality of judgments with the need

Civil No. 24-1596 (GMM)
Page -6-

to examine possible flaws in the judgments." <u>Bouret-Echevarria v.</u> <u>Caribbean Aviation Maint. Corp.</u>, 784 F.3d 37, 42 (1st Cir. 2015). "[A]n inquiring court should assume the truth of fact-specific statements" contained in the motion. <u>Teamsters, Chauffeurs,</u> <u>Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp.</u> <u>Co.</u>, 953 F.2d 17, 18 (1st Cir. 1992).

### III. ANALYSIS

VBC makes two main contentions in their Motion to Alter Judgment. (Docket No. 11). First, that the Court lacked authority to *sua sponte* dismiss for lack of personal jurisdiction. <u>Id.</u> Second, that the Court erred in determining that there is not personal jurisdiction over non-domiciled Defendant Ring MD. <u>Id.</u>

As to the first, the Court finds it acted within its authority; and as to the second, after reviewing novel evidence presented by Plaintiffs, the Court reaffirms that it does not enjoy personal jurisdiction and grants a transfer to the District of South Carolina.

A.    *Sua Sponte* <u>Determination of Personal Jurisdiction</u>

Whereas it remains true that, as a general rule, "a district court has no authority, *sua sponte*, to dismiss for lack of personal jurisdiction" – the First Circuit has recognized a carve-out as it pertains to default judgment. <u>Pilgrim Badge & Label Corp. v.</u> <u>Barrios</u>, 857 F.2d 1, 3-4 (1st Cir. 1988). "[A] district court may

Civil No. 24-1596 (GMM)
Page -7-

not *sua sponte* dismiss for lack of personal jurisdiction <u>except</u> when default judgment is to be entered . . . ." <u>Id.</u> (emphasis added) (*citing* <u>Williams v. Life Sav. & Loan</u>, 802 F.2d 1200, 1203 (10th Cir. 1986)).

"[W]hen judgment is sought against a party who has failed to plead or otherwise defend [*i.e.*, the party is in default] a district court has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties [*i.e.*, personal jurisdiction]." <u>Gagnon v. Gagnon</u>, 621 F. Supp. 3d 229, 231 (D.N.H. 2022) (*quoting* <u>Sun Life Assur. Co. of Can. v. Conroy</u>, 431 F. Supp. 2d 220, 224 (D.R.I. 2006)). Therefore, "[t]he [C]ourt must determine, by a preponderance of the evidence, that it has jurisdiction over the parties prior to reaching the default judgment issue." <u>Ests. of Ungar and Ungar ex rel. Strachman v. Palestinian Auth.</u>, 325 F. Supp. 2d 15, 45 (D.R.I. 2004).

"A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void and may be set aside at any time pursuant to Fed. R. Civ. P. 60(b)(4)" <u>Precision Etchings & Findings v. LGP Gem</u>, 953 F.2d 21, 23 (1st Cir. 1992) (internal citation omitted); *see e.g.*, <u>De Leon v. Ocean Motion Watersports, Ltd.</u>, No. 13-CV-218-SM, 2016 WL 3911880, at *1 (D.N.H. July 13, 2016) ("Prior to granting plaintiff's motion for default judgment, the court . . . noted its independent obligation to ensure that it may properly exercise personal jurisdiction").

Civil No. 24-1596 (GMM)
Page -8-

Since Ring MD failed to plead and was in default, this Court had the responsibility – prior issuing a judgment - to assure whether it indeed retains personal jurisdiction over Ring MD. Accordingly, the Court did not err in making a *sua sponte* determination as to personal jurisdiction.

B.    Personal Jurisdiction

The Due Process Clause limits the power of a State or Territory to assert personal jurisdiction over a nonresident defendant. Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty., 480 U.S. 102, 108 (1987). Accordingly, a Court may exercise personal jurisdiction over a nonresident defendant when such defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In evaluating minimum contacts with the forum, this Court must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253 (1958). To assist in the minimum contacts analysis, the Supreme Court has drawn a distinction between specific and general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413 (1984).

To establish specific jurisdiction, the defendant must have purposely directed his activities at the resident of the forum, and the litigation must result from the alleged injuries that "arise out of or relate to" the defendant's activities directed at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The focus is on the relationship between the defendant, the forum, and the litigation. Id. at 474.

As for general jurisdiction, where the cause of action is not related to or does not arise from the defendant's activities in the forum, the forum may still assert general jurisdiction over the defendant if the defendant's contacts with the forum are of a "continuous and systematic" nature. Helicopteros, 466 U.S. at 414-15. Due process requires "continuous and systematic" contacts because the forum does not have a direct interest in the underlying dispute. Id. at 415-16.

The critical factor in the personal jurisdiction calculus – for both general and specific - is the existence of "minimum contacts" between the nonresident defendant and the forum. Negron-Torres v. Verizon Commc's., Inc., 478 F.3d 19, 24 (1st Cir. 2007). It is axiomatic that a court asserting jurisdiction over a nonresident defendant must find that the nonresident defendant maintains sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316.

```
Civil No. 24-1596 (GMM)
Page -10-
```

"Where a district court's personal jurisdiction is contested, plaintiffs ultimately bear the burden of persuading the [C]ourt that jurisdiction exists." Negron-Torres 478 F.3d at 23 (*citing* Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

C.    Location of Payment

As it appears in the four corners of VBC's *Complaint* – and as alleged by VBC in its *Motion to Alter Judgment* – in this case, the sole basis for personal jurisdiction is that "[t]he contract established a term of one year to pay the principal amount, which was to be mailed via check to VBC's Puerto Rico address no later than December 31, 2021." (Docket No. 11 at 5). In the absence of a 'continuous and systematic' business activities by Ring MD with the forum of Puerto Rico, VBC argues that this Court enjoys specific personal jurisdiction over Ring MD on the basis the location of payment – as explicitly agreed by the parties in their contract.

From the start, Plaintiffs implicitly concede that this Court lacks general personal jurisdiction over Defendants – the record bears this out, as Defendants are domiciled in South Carolina. (Docket No. 1 ¶ 12). As such, this Court turns to evaluate whether specific personal jurisdiction would exist.

Civil No. 24-1596 (GMM)
Page -11-

There is clear jurisprudence indicating that location of payment - by itself - is not enough to establish minimum contacts with the forum State or Territory, for the purpose of proving the existence of specific personal jurisdiction. Burger King, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); Adams v. Adams, 601 F.3d 1, 7 (1st Cir. 2010) ("[W]e have held that a defendant's entering into a contract with a resident of the forum state cannot automatically establish minimum contacts."); Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship - say, by solicitation [] - the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.").

In compliance with the Court's *Order*, (Docket No. 12), VBC filed documentary evidence as to whether personal jurisdiction exists. Even in light of such filings, the Court finds that VBC has not met its burden of demonstrating that this Court made a clear error of fact or a manifest error of law that would warrant altering the *Memorandum and Order* that dismissed without prejudice VBC's petition of entry of default judgment for lack of personal

Civil No. 24-1596 (GMM)
Page -12-

jurisdiction over the non-domicile Defendant Ring MD. (Docket No. 9).

As expressed above, location of payment – by itself – is not sufficient to establish personal jurisdiction at the forum State or Territory where such payment ought to be sent. *See* Burger King Corp., 471 U.S. at 478; Adams, 601 F.3d at 7; Phillips Exeter Acad., 196 F.3d at 292.

Any potentially antecedent behavior to the contract is not loadbearing in this Court's analysis, as Plaintiff does not provide evidence to support such inferences. Of course, this Court is under an obligation to assume a "highly realistic approach" that accounts for "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." Burger King Corp., 471 U.S. at 479. As part of this inquiry, "[t]he location of where payments are to be sent has been recognized as a material contact in jurisdictional analysis." Ganis Corp. of Cal. v. Jackson, 822 F.2d 194, 198 (1st Cir. 1987). Nonetheless, "[e]ven so, that fact alone does not possess decretory significance." Phillips Exeter Acad., 196 F.3d at 291.

As for the services contract between VBC and Ring MD, Defendant was aware that it was affiliating itself with an enterprise based in Puerto Rico – as evidenced by the terms of the

Civil No. 24-1596 (GMM)
Page -13-

contract which (1) explicitly describe VBC as "a Puerto Rico
limited liability company" and (2) further indicate that the
"[c]heck should be addressed" to a Puerto Rico address. (Docket
No. 1-1 at 1, 4). Yet these contractual terms merely demonstrate
prior notice as to the fact that the location of payment was Puerto
Rico. There is no indication that negotiations took place in Puerto
Rico, that the services were to be rendered from or in Puerto Rico,
or that the contractual agreement was to be enforced in Puerto
Rico. Even after awarding VBC an opportunity to clarify the record
through the submission of additional documentary evidence, there
is a lack of information pertaining to the negotiations preceding
the formation of the contract or any details about the services to
be performed pursuant to the agreement. *See* Burger King Corp, 471
U.S. at 479 ("It is these factors – prior negotiations and
contemplated future consequences, along with the terms of the
contract and the parties' actual course of dealing – that must be
evaluated in determining whether the defendant purposely
established minimum contacts with the forum."). As such, even
though the contract established Puerto Rico as the location of
payment, the contractual terms fall short from indicating whether
VBC's "operations are conducted and supervised from [Puerto Rico],
[whether] all relevant notices and payments must be sent there,
and [whether] the agreements were made in and enforced from [Puerto
Rico]." Id. at 480.

Civil No. 24-1596 (GMM)
Page -14-

In sum, there are neither allegations nor evidence on the record indicating that Ring MD had previous or ongoing contracts or connections with VBC in Puerto Rico – hence not satisfying general personal jurisdiction. Likewise, designating Puerto Rico as the location where a payment check ought to be sent does not entail – for purposes of specific personal jurisdiction – sufficient 'minimum contacts' with the forum, nor purposeful availment to the jurisdiction of the forum. In addition, the contract between VBC and Ring MD contains a provision specifying that Delaware law governs, which suggests that Ring MD never had the intention of purposefully availing itself of the benefits and protections of Puerto Rico's laws. (Docket No. 1-1 at 4) ("This letter agreement shall be governed by the laws of the State of Delaware and may be executed in counterparts"); *see* <u>Inamar Inv., Inc. v. Lodge Props., Inc.</u>, 737 F. Supp. 12, 14 (D.P.R. 1990) ("Furthermore, we observe that the contract contained a provision specifying that Colorado law would govern the agreement, which clearly suggests that Lodge never had the intention of purposefully availing itself of the benefits and protections of Puerto Rico's laws"); *see also* <u>Burger King</u>, 471 U.S. at 481-482 ("Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has purposefully invoked the benefits and protections of a State's laws" for jurisdictional purposes") (internal quotations omitted).

Civil No. 24-1596 (GMM)
Page -15-

Hence, the Court reiterates that, although location of payment is a relevant factor in determining the existence of personal jurisdiction, such location – by itself and in the absence of additional coetaneous elements – is not sufficient to establish personal jurisdiction. *See* (Docket No. 9 at 5-13).

D.    Subsidiary Corporation

VBC submitted documentary evidence demonstrating that Ring MD is the parent corporation and controlling shareholder of RMD PR LLC - an active limited liability corporation that is registered in the Puerto Rico Department of State's Corporations Registry; registered in the Puerto Rico Department of Treasury's Merchants Registry; and has a business bank account in a Puerto Rico-based financial institution (Docket Nos 13-1 at 1; 13-3; 13-4; 13-5; 13-6). VBC alleges that the subsidiary's "operations and purposeful conduct of commercial activities in the Puerto Rico forum" may serve as grounds to exercise personal jurisdiction over its parent corporation. (Docket No. 13 ¶ 2).

"The mere fact that a subsidiary company does business within a [S]tate does not confer [personal] jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary." Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980) (internal citations omitted). "There is a presumption of corporate separateness that must be overcome by

Civil No. 24-1596 (GMM)
Page -16-

clear evidence that the parent in fact controls the activities of the subsidiary." Id. Accordingly, to exercise personal jurisdiction over a parent corporation for the acts of its subsidiary corporation, a plaintiff must "produce strong and robust evidence of control by the parent company over the subsidiary, rendering the latter a mere shell" for the former. De Castro v. Sanifill, Inc., 198 F.3d 282, 283-84 (1st Cir. 1999) (*quoting* Escude Cruz, 619 F.2d at 905) (internal quotations omitted).

"The mere fact that a subsidiary company does business within [Puerto Rico] does not confer [personal] jurisdiction over its nonresident parent company, even if the parent is the sole owner of the subsidiary," United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1084 (1st Cir. 1992), unless there is "clear evidence that the parent in fact controls the activities of the subsidiary." Negron-Torres, 478 F.3d at 27.

In sum, to determine whether to treat the parent and subsidiary as the same corporate entity for purposes of personal jurisdiction - courts must conduct a fact-specific inquiry that looks into: "the extent to which a subsidiary may have disregarded corporate formalities; the degree of control exercised by the parent over the day-to-day operations of the subsidiary; overlap in ownership; [and] whether the subsidiary was adequately capitalized." De Castro, 198 F.3d 282 at 284.

Civil No. 24-1596 (GMM)
Page -17-

Here, the parent company – Ring MD – is based in South Carolina but is being sued by VBC in Puerto Rico, whereas it is the subsidiary company – RMD PR LLC – who has a continued presence in the forum of Puerto Rico. Although both corporations are distinct, thereby enjoying independent legal personalities, Ring MD owns and controls 90% of RMD PR LLC. (Docket No. 13-1 at 1). Despite this ownership, it remains unclear the extent to which Ring MD exercises actual business control over RMD PR LLC.

Muddying the waters even more are the following facts: (a) the President and Founder of VBC, Harlan Harvey ("Mr. Harvey"), was one of the founders of RMD LLC PR and seemingly appears to be the designated agent of RMD LLC PR (Id.; Docket No. 13-2); (b) RMD LLC PR was incorporated in the same address as VBC, which is also the same address where the payment check in question should have been sent (Docket Nos. 1-1; 13-5); (c) RMD LLC PR's bank accounts are registered under the same address as VBC which – again - is also the same address where the payment check in question should have been sent (Docket Nos. 13-6; 13-7; 13-8; 13-9; 13-10); (d) in light of the bank statements filed in front of this Court - all of which are from 2019 - RMD PR LLC at the time had less than $200 in its bank, indicating potential undercapitalization (Id.); (e) the only individual who is registered as the owner of RMD PR LLC's bank accounts is Mr. Harvey, in accordance with the 2019 documents submitted by VBC to this Court (Id.); and (f) the only transactions

Civil No. 24-1596 (GMM)
Page -18-

that appear recorded on RMD LLC PR's bank statements from 2019 are seemingly non-business-related personal expenses - without clear indication that RMD PR LLC's activities were related to that of its parent organization (Id.).

Taking all these factors together and weighting them in light of the entire record, there is not enough information for this Court to determine that RMD PR LLC is under the direct control of Ring MD, as required by applicable jurisprudence in order to treat the parent and subsidiary as a singular corporate enterprise for the purpose of establishing personal jurisdiction.

Consequently, this Court may not exercise personal jurisdiction over the parent corporation Ring MD through its subsidiary corporation RMD PR LLC, because - as required by applicable jurisprudence - VBC has failed to show that the parent corporation exercises control over the subsidiary to the extent that the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the parent corporation.

E.    Venue Transfer

VBC petitions in the alternative that, if this Court finds that it lacks personal jurisdiction over Ring MD, then the civil action be transferred to the District Court for the District of

Civil No. 24-1596 (GMM)
Page -19-

South Carolina instead of being dismissed. (Docket No. 11 at 16-18).

Pursuant to 28 U.S.C. § 1631, a Court is authorized to – instead of dismissing a civil action – transferring such action from one venue to another whenever it finds that it lacks jurisdiction and that a transfer is consistent with the interest of justice. Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 43 (1st Cir. 2006); Britell v. United States, 318 F.3d 70, 72-76 (1st Cir. 2003).

In addition, under 28 U.S.C. § 1404, the Court has discretion to transfer a case after taking an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). In so doing, the Court considers factors such as: (1) the plaintiff's choice of forum; (2) the relative convenience of the parties; (3) the convenience of the witnesses and location of documents; (4) any connection between the forum and the issues; (5) the law to be applied; and (6) the state or public interests at stake. First State Ins. Co. v. XTRA Corp., 583 F. Supp. 3d 313, 318 (D. Mass. 2022). In addition, Plaintiff "bear[s] the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000).

Civil No. 24-1596 (GMM)
Page -20-

As for the case at hand, with respect to Plaintiff's choice of forum, VBC brought suit in Puerto Rico. However, it is VBC who now argues for the transfer. Accordingly, the Court now examines the factors that weight in favor of transferring this action to the District Court for the District of South Carolina.

In relation to convenience to the parties, convenience of the witnesses, and location of documents, these factors favor a transfer. Specifically, Ring MD is incorporated and has its principal place of business in South Carolina (Docket No. 13 at 16) – thereby making South Carolina an appropriate venue. BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 696 (1st Cir. 2023) ("[A] corporation is 'considered a citizen of the State where it has its principal place of business,' as well as a citizen of its state of incorporation.") (quoting Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. 378, 381 (2016)); 28 U.S.C. § 1332(c).

Furthermore, as it relates to connection between the forum, connection with the issues, and the public interests at stake, these factors weigh heavily in favor of a transfer – given that Ring MD is domiciled in South Carolina. As to applicable law, here, the contract at issue includes a choice-of-law clause which indicated that the laws of the State of Delaware govern – which does not weight in favor or against transfer. (Docket No. 1-1 at 4). Additionally, there are no claims of complex or unsettled

Civil No. 24-1596 (GMM)
Page -21-

issues of State or Territorial law, which similarly does not weight in favor or against transfer.

As such, taking these factors as a whole, the Court finds that transferring this civil action to the District Court for the District of South Carolina is fair and appropriate, as it preserves VBC's right to seek redress and presents no inconvenience to Ring MD to litigate in its forum of domicile. Therefore, pursuant to 28 U.S.C. § 1631, this Court hereby TRANSFERS this claim to the District Court for the District of South Carolina for review.

## IV.    CONCLUSION

VBC's *Motion to Alter Judgment* (Docket No. 11) is **GRANTED IN PART** and the civil action is **TRANSFERRED** to the District Court for the District of South Carolina. Amended Judgment shall be entered accordingly.


IT IS SO ORDERED.

In San Juan, Puerto Rico, October 8, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE